Thank you, Your Honor. Good morning. I'm Rick Gass, and I represent the plaintiff, Century Surety. Although I could list for you ten errors in the handling of this particular motion in the district court, the bottom line on this appeal really comes down to three points, and then the fourth point being what the defendants are asking you to do. Number one, the wrong standard was applied to this what is called a special motion to dismiss under an anti-SLAPP statute of the state of Nevada, and the defendants concede that a wrong standard was applied. Secondly, this dismissal occurred without even the limited discovery allowed by the Nevada anti-SLAPP statute, which is denominated an interloper statute interfering with the federal rules of civil procedure, which should have been followed in this case. And thirdly, the dismissal occurred without the normal and customary option of the plaintiff being allowed to amend to meet the errors in the district court's decision. And on those three bottom line items, today you're being asked to complete this tainted process with a request by the defendants for you to act not as a court of review, but as a court of first view. They are submitting to you that you can take what's in this record without any discovery granted to the plaintiff and make factual determinations and determinations of law. Where I would like to start is with the four concessions that the defendants have made. The first one is only to demonstrate for you how erroneous this district court opinion was, and that is that on the RICO claim, the district judge applied the federal RICO element of pattern and did not apply the actual state RICO statute. That's how erroneous it was. But now back to the first three concessions that relate to the erroneous standard of care or standard that was applied to evaluate the motion to dismiss. The judge applied a standard of clear and convincing, imposing that on Sentry as the non-moving party's burden in the case, and going so far as to say Sentry had not sufficiently disputed Prince's assertions to show that the defendant abused the privilege to petition the court by publishing the communication with malice in fact. So he imposed on a party opposing a motion to dismiss a requirement of evidence out of clear and convincing and inserted malice as one of those elements. It is in none of the anti-SLAPP cases. The second concession that was made by the defendants is that the district court was required to treat the anti-SLAPP motion as a motion for summary judgment, and it did not. The district court quoted the 2015 amendment to the Nevada anti-SLAPP statute, but then didn't apply the two-step process in the 2015 amendment. The judge then used the 2013 amendment, which of course had been bypassed, superimposed by the 2015, but he didn't know about the decision two weeks before his decision by the Nevada Supreme Court that says neither of those statutes could have been retroactive, and thus the standard that should have been applied to this motion was of a summary judgment motion proceeding. The third concession made by the defense is that all that is necessary to defeat a motion of this nature is evidence for a reasonable juror drawing all inferences in favor of sentry and that they would find for sentry. The answer to that question comes right from Judge Gordon, who is handling the bad faith action that has grown out of this orchestrated default judgment. Judge Gordon, in the federal district court in Las Vegas, denied the plaintiff's motion for summary judgment saying this, and this comes from Federal Supplement 3rd, 134 Federal Supplement 3rd. Did you cite this in your brief? Yes. Okay. 1268. Judge Gordon wrote, genuine issues of material fact remain regarding whether the settlement agreement was the product of fraud and collusion, just what we sue for in this case, and concluded that a reasonable jury could find the settlement agreement and default judgment were the product of fraud and collusion. Quotes, Viewing the facts in the light most favorable to sentry, a reasonable jury could find the settlement agreement was fraudulent or collusive at page 1269. Quotes, supporting coverage under the sentry policy. Continuing in quotes, Viewing the totality of these circumstances in the light most favorable to sentry, a reasonable jury could find the settlement agreement and resulting default judgment were the product of fraud or collusion designed to manufacture coverage where none existed under the sentry policy. End of quote. So we have the answer, based on the concession of the defendants in this case, that if a proper procedure had been followed and we had gone through summary judgment and not this special motion to dismiss, there is the requisite jury determination that needs to be made. There's the requisite evidentiary base for a jury to reasonably infer fraud and collusion, which we sue for independently in this case. This case is a situation where the primary or the personal insurance carrier progressive on Mr. Vasquez paid their limits, but then their attorney, Mr. Rinaldi, got together with the plaintiff's attorney, Mr. Prince, and they orchestrated this default judgment. Counsel, you're down to less than a minute. Did you wish to save any rebuttal time? I think it's more important for me to finish this, and I will not have rebuttal. Thank you. Think of the cognitive dissonance of an attorney for the personal car coverage working to pay money for personal coverage but working to try and orchestrate a claim under the garage coverage, the policy on the separate vehicle that wasn't involved in this. It is so dissonant that an attorney would pay money under a personal policy that couldn't cover business operations and then get into bed with the plaintiff's attorney to create a fraudulent default judgment for $18 million that even included $6 million of attorney's fees. Given the wrongful standards applied by the district court, this case has to go back for proper proceedings under the federal rules of civil procedure and summary judgment. Thank you. Thank you, Counsel. Good morning, Your Honors. I'm Joe Guerin. I represent Dennis Prince. Megan Hummel is at counsel table with me. She was very involved in the defense. The district court order July 13, 2017, where the court granted the anti-SLAPP relief, it survives a de novo review, and that's what the court's supposed to do is take the entire record and conduct a de novo review. The 2015 decision in Songer, 2016 decision in Songer, basically held that the pre-2013 version of the SLAPP statute applied, and what the court should do is look at whether there's a good faith communication made in furtherance of the right to petition, and then the burden shifts to the non-moving party to establish a genuine issue of material fact. So if we apply that analysis, let's look at what Mr. Prince did and what it was they claim was not a proper statement or not a good faith statement within the statute. What they attack is an allegation that he made in the state court complaint that Mr. Vasquez was in the course and scope of work for Blue Streak. Now Century disagrees with that because they did their own investigation before the lawsuit was filed, and they interviewed Mr. Vasquez, and they had their investigator go over, but they preloaded the investigator with questions, leading questions, where they wanted Mr. Vasquez to say into a tape recorder that he was doing personal stuff, he wasn't doing anything related to work. Here's the problem with that. The police report, which was contemporaneous, the statement he made was that he had just gotten off work. The Blue Streak business was a virtual business. He ran it basically off a website and a phone. It was the same phone number that he had as his personal phone number, and there was evidence, and there's evidence in Century's claim notes, which indicates that there was a witness who may have seen Vasquez working or coming out of the car wash shortly before the accident occurred.  Nevada has a broad and expansive view of course and scope. So the question is, Mr. Prince's allegation, does that qualify as a good-faith statement or a statement that would be entitled to protection under the NTSLAP statute? And the answer has to absolutely be yes because there's an evidentiary basis for the allegation, and that's all that's required by Rule 11. So he complied with Rule 11. Now, this is where this case just really goes off the rails. He sends a copy of the complaint to Century. They say, We're not going to cover it. He sends them the default, and they respond basically the same day. We're not going to cover it. They absolutely breach their duty to defend. So the default judgment is taken. They try and get back into the case by filing a motion to set aside or a motion to intervene, which Judge Herndon in the state court, and he rejects it. He points out, You put your head in the sand. You're not coming in now.  So then the bad-faith case is filed. And this is where the NTSLAP fails or the NTSLAP argument is the best for us. They cannot possibly come forward with any evidence to defeat the arguments. The first one was that Mr. Prince's statements, the ones that they're attacking in this complaint, are legally privileged. Nevada has a broad and expansive view of the absolute litigation privilege, and anything that he said in the complaint is not a basis for liability. The second thing on statute of limitations, anything that would have been needed by sentry in order to respond to statute of limitations arguments, they would have had in their file because the focus is on what it is they knew and when they knew it. So there wasn't a need for discovery. One of the arguments that counsel made was that there was limited discovery allowed. We filed a motion to challenge the need for discovery in the case, and Judge Lean conducted a pretty extensive argument. It's a part of the record. It's about 20 pages. But she goes through and she points out that sentry was able to respond to the motion to dismiss without filing a 56D affidavit, without specifically identifying questions of fact that would somehow change these legal issues that were before the court. In response to the motion to stay, sentry cited heavily to the metabolite case, which deals with discovery in the context of NTSLAP, and it also talks about the necessity to file a 56D request. They never did that. There was never a request made for a 56D relief. Counsel cited to an opinion by Judge Gordon, and I think he was referring to a 2013 opinion, and that opinion invited sentry to come forward with evidence of fraud. He said, bring forward your evidence of fraud. In 2015, sentry requested more time to do discovery on the fraud, and Judge Gordon denied it and said, you've had enough time already. So what they do is they file this, in essence, third lawsuit out of a 2009 accident. One last point, Your Honors. The idea that an opposing party is going to be sued because of allegations they make on behalf of a client is totally opposite to what our adversarial system requires. And what sentry is trying to do is create a new avenue for where an insurer commits bad faith. They can now go after the attorney, the opposing attorney, and say, you know what, you set this up somehow. And I think that if this case goes back, if it's reversed, that's what we're going to see is this new argument. If an attorney can be held liable, Mr. Prince could be held liable for statements or actions that he's taken in the course of representing a client, it just opens the door for attorneys to be sued, and we're going to be constantly looking over our shoulders to decide whether we want to be sued or make an allegation on behalf of a client. And unless the Court has questions. I don't believe that we do. Thank you. Thank you. Thank you, Your Honors. My name is Riley Clayton, and I represent the attorney, George Rinali, in this case. He's also sued as a defendant. He's a co-appley in this case. Given the limited amount of time, I want to focus my argument on certain undisputed and dispositive facts that are in the record of this case, which this Court, on its de novo review, can consider and affirm the judgment that Judge Mahan did below. These are the undisputed facts. Before George Rinali was ever involved in this case, Progressive and Dennis Prince had reached an agreement for the settlement. That's an undisputed fact. Number two, before George Rinali ever was introduced into this case, Dennis Prince had filed a complaint against Vasquez. In that complaint, it alleged course and scope, before George Rinali was ever involved. Before George Rinali was ever involved, Prince had obtained default against the driver. Before George Rinali was ever involved in this case, Mr. Prince had sent a copy of that complaint and the notices of the default to Century. Before George Rinali is ever involved in this case, there's a default in place. He gets a call from Progressive saying, hey, we've reached an agreement, going to represent the insured Mr. Vasquez on executing the covenant, assigning the rights, and protecting his interests. If you have any changes, make some changes. The only change that Mr. Rinali did in this particular case, undisputed, was saying, hey, if you're going to have a judgment against my client, don't record it. That's the extent of his involvement. Those are the undisputed facts as to Mr. Rinali. Here's the other critical, controlling, dispositive fact. All of this conduct took place within the context of anticipated litigation or litigation itself, thereby lending the defense of the absolute litigation privilege to the conduct that's taking place here. That's why the claims fail. The other undisputed fact, and it's interesting because if Century wants to live by Judge Gordon's ruling, the converse is true. That ruling from Judge Gordon was that Century breached its duty to defend. Both the RICO claim and the conspiracy claim include a causation element. Did this wrongful conduct cause any damage? It can't cause damage when all of this is alleviated, when all of this never takes place, and we are not here in this situation today if Century steps in, does what it's obligated to do, defend its insured. If it wanted to contest the sufficiency of course and scope, step in and defend. Because Judge Gordon has held, and now it's a confirmed fact, that Century breached its duty to defend. So why are we here on summary judgment or any particular standard the court wants to evaluate this under? There's no causation. There is no causation because Century is at fault by not defending, and the absolute litigation privilege protects any conduct assuming it were wrongful. The final point I want to make is this is not wrongful. You look at the Samson case, you look at the same case in Andrew where Judge Gordon says when attorneys and litigants are situated or postured in a situation where the insurance company refuses to defend, they get to take their own steps to protect themselves by entering into agreements. I see that my time is up. It is. I appreciate the opportunity to argue this point, and defendants will request this be affirmed below. Thank you. Thank you, counsel. The case just argued is submitted, and we thank all counsel for their helpful arguments. And for this morning's session, we stand adjourned.
judges: Fernandez, Graber, Owens